USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 10/16/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TUHIN KUMAR BISWAS,

        Plaintiff,

v.

ETHAN ROUEN, SURESH
NALLAREDDY, UROOJ KHAN,
FABRIZIO FERRI, DORON NISSIM, *and*
COLUMBIA UNIVERSITY IN THE CITY
OF NEW YORK,

        Defendants.

18-CV-9685 (RA)

MEMORANDUM
OPINION AND ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff Tuhin Kumar Biswas, proceeding pro se, has filed this action against Defendants Ethan Rouen, Suresh Nallareddy, Urooj Khan, Fabrizio Ferri, Doron Nissim, and Columbia University (collectively, "Defendants") for committing an "intellectual property violation under oath in the form of plagiarism," breach of trust, destroying evidence, and fraud. Defendants now move to dismiss Plaintiff's complaint. For the reasons that follow, Defendants' motion is granted.

## BACKGROUND

### I.    Factual Background

    The following facts are adopted from Plaintiff's complaint, and are assumed to be true for the purposes of this motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

    Plaintiff is an Indian citizen currently residing in Kolkata, India, who, from August 2012 to August 2015, was a PhD student in Columbia Business School's ("CBS's") Accounting Department (the "Department"). *See* Compl. at 10. Defendant Rouen is a former PhD student at

CBS. *See id.* Defendant Nallareddy is the former PhD coordinator of the Department, *see id.* at 11; Defendant Ferri is the former Chair of the Department, *see id.*; and Defendant Nissim is a faculty member in the Department, *see id.* at 9, 11.

According to Biswas, in the Fall of 2012, he attended Professor Robert F. Engle's "PhD Financial Econometrics" class at New York University, where he began formulating certain "ideas and empirical methods" for a paper. *Id.* at 10. On September 8, 2014, Biswas, for the first time, presented slides from his subsequent paper, "Accounting Factors Driving Book-to-Market in Predicting Aggregate Stock Returns." *Id.* Shortly thereafter, Biswas circulated this paper within the Department. *See id.*

On April 13, 2015, a paper entitled "On the Disparity between Corporate Profits and Economic Growth," co-authored by Defendants Khan, Nallareddy, and Rouen, was circulated among the Department members. *See id.* Two days later, this paper was presented to the CBS department by Nallareddy. *See id.* According to Plaintiff, the latter paper had "some key concepts and empirical applications" that were "very skillfully adapted and applied without citing [his] paper" or the papers referenced therein. *Id.*

Sometime in 2015, both papers were selected for presentation at the Trans-Atlantic Doctoral Conference held at London Business School. *See id.* Plaintiff asserts that, after "some of the concepts and empirical adaptations of [his] paper [were] highlighted" at this conference, the authors of the other paper "became aware of the danger of being caught" for copying his work and "took cover-up steps to hide [their] plagiarism." *Id.* This included removing certain keywords from their paper to make it seem less similar to Plaintiff's. *See id.* at 11-12. On October 21, 2015, Plaintiff claims that he was "forcefully terminated" from the PhD program and instead awarded a Master's of Science in Business Research. *Id.* at 10. Plaintiff subsequently

2

returned to India. *See id.*

On April 15, 2016, Plaintiff filed a complaint with the University Office of Equal Opportunity and Affirmative Action (the "EEOA") and CBS, formally alleging that his paper had been plagiarized by Rouen, Nallareddy, and Khan. *See id.* at 13. The EEOA referred this matter to the Doctoral Program at CBS, which, according to Biswas, "seemed to show reluctance in dealing with [his] intellectual property violation case and took an unusually long time in dealing with the issue." *Id.* Plaintiff further asserts that, from early June 2016 onward, CBS blocked his Columbia University email accounts. *See id* at 13, 14.

On September 23, 2016, Plaintiff was informed by the Office of Research Compliance and Training (the "RCT") that "the University's Standing Committee on the Conduct of Research" (the "Committee") had initiated an inquiry into his plagiarism claim. *Id.* at 14. On December 30, 2016, the Committee's draft inquiry report was sent to Plaintiff for comment. *See id.* at 15. According to Biswas, "the draft Inquiry Report did not find anything suspicious to warrant an Investigation." *Id.* Plaintiff filed several objections. *See id.* First, Plaintiff claimed that there existed a conflict-of-interest, as "one of the [Committee] members was the spouse of one of the Professors acknowledged in both the Plagiarized Paper" and a subsequent paper authored by Rouen, Nallareddy, and Khan; second, Plaintiff protested that, whereas the accused was allowed to correspond with the Committee, he had been given no opportunity to do so; and, finally, Biswas argued that the draft inquiry report's acceptance of the accused's defenses was flawed. *See id.*

According to Plaintiff, the RCT agreed to form a new preliminary inquiry committee (the "New Committee") based on the conflict of interest that he had identified in his objections. *See id.* at 16. The New Committee informed Biswas that it would not have access to the old draft

3

inquiry report, and invited Plaintiff to meet with it to discuss his plagiarism claims. *See id.* On March 8, 2017, Plaintiff addressed the New Committee via video conference. *See id.* At this conference, Plaintiff asserts that the committee members were "trying to save the accused." *Id.*

On March 30, 2017, Plaintiff received the New Committee's draft report, which, "like the earlier one, concluded that [his] allegations [were] baseless." *Id.* at 17. In response, Biswas contended that this new report was also "erroneous, incomplete, and inadequate." *Id.* In particular, Plaintiff asserted that: (1) the RCT based the new draft report on an inaccurate transcript of the March 8, 2017 hearing that Plaintiff had not "endorsed," *id.*, and (2) this report was based on various "manufactured and pre-dated documents," *id.* at 17. The New Committee rejected Plaintiff's objections, and finalized the report on May 25, 2017. *See id.* at 18.

Shortly after receiving the final report, Biswas informed the New Committee that he would seek "legally appropriate platforms outside Columbia for redressal of [his] grievances." *Id.* at 18. Plaintiff alleges that, in response, he received an email from a Columbia University representative requesting his silence. *See id.* Nevertheless, on September 1, 2017, Biswas filed a complaint with the U.S. Department of Justice, Civil Rights Division, Education Section ("DOJ"). *See id* at 18, 11. A week later, he reported this issue to the Department of Homeland Security ("DHS"). *See id.* at 11. On April 6, 2018, DOJ advised Plaintiff that it could not take any action in this matter. *See id.* at 18. It is not clear whether Biswas has received any response from DHS.

## II. Procedural Background

On October 17, 2018, Plaintiff filed the instant complaint. *See* Dkt. 1. Plaintiff makes four principal claims. *See* Compl. at 5. First, Biswas alleges that Defendants Rouen, Nallareddy, and Khan committed an "Intellectual Property Violation under oath in the form of

4

Plagiarism of [his] research paper," and that Defendants Ferri, Nissim, and Columbia University aided and abetted this plagiarism. *Id.* at 5-6. Second, Plaintiff contends that all six Defendants committed a "Breach of Trust" by failing to "inquire, investigate, and adjudicate [his] Plagiarism case." *Id.* Third, Biswas asserts that, by blocking his university email accounts in June 2016, Defendant Columbia University committed "Destruction of Evidence" in an attempt to cover up communications that may have lent credence to his plagiarism claim. *Id.* Finally, Plaintiff alleges that all six Defendants committed fraud by, among other things, poorly handling his plagiarism case and basing the final inquiry report on manufactured and backdated documents and an inaccurate transcript of the May 8, 2017 video conference. *See Id* at 5-6, 13. By way of relief, Plaintiff seeks: (1) $20,000,000 from Defendants for "stealing/extorting [his] hard produced (in extremely hostile conditions) Intellectual Property"; (2) revocation of the individual Defendant's honors, degrees, etc. from Columbia University; and (3) an "[a]ppropriate and [a]cceptable apology letter from Columbia University." *Id.* at 6.

On April 1, 2019, Defendants moved to dismiss the complaint pursuant to Rule 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedures.[1] *See* Dkts. 33, 34. Plaintiff opposed this motion on April 12, 2019, *see* Dkt. 36, and Defendants replied on April 19, 2019, *see* Dkt. 40.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] For the reasons provided in this Opinion, the Court principally dismisses Plaintiff's claims pursuant to Rule 12(b)(6).

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Pro se complaints, in particular, are to be liberally construed, and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks omitted). But even the pleadings of pro se plaintiffs "must contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009) (quoting *Twombly*, 550 U.S. at 555).

## ANALYSIS

### I. Plaintiff's Plagiarism Claim

In his complaint, Plaintiff first alleges that Defendants committed an "Intellectual Property Violation under oath in the form of Plagiarism" by copying key concepts in his paper without crediting him, or aided and abetted this violation. Compl. at 5. Specifically, Plaintiff asserts that, by using "intellectual property in the form of [his] research paper" without attribution, Defendants breached a "signed oath not to indulge in academic dishonesty" with respect to another's work. *Id.* at 10.

Plaintiff does not identify a specific cause of action allowing for such allegations to be brought in this Court, however. Accepting Biswas's allegations as true, the individual Defendants may have plagiarized ideas from Plaintiff's paper in violation of university policy. But such an alleged violation is for the university, and not the judiciary, to adjudicate. *See Leary v. Manstan*, 3:13-cv-00639 (JAM), 2018 WL 1505571, at *2 n.1 (D.Conn. March 27, 2018) ("True plagiarism is an ethical, not a legal offense and is enforceable by academic authorities,

not courts.") (quoting *Black's Law Dictionary* 1170 (7th ed. 1999)).

Defendants nevertheless treat Plaintiff's plagiarism claim as one brought under the Copyright Act. *See* Defs'. Br. at 10-14 (arguing that Plaintiff's plagiarism claim is preempted by the Copyright Act and fails to state a claim for copyright infringement). It is true that "when a party asserts that it did not receive proper credit, the claim is in effect, plagiarism, and is cognizable—if at all—only under the Copyright Act." *Contractual Obligations Prods. LLC v. AMC Networks, Inc.*, No. 04 Civ. 2867 (BSJ)(HBP), 2007 WL 9683718, at *4 (S.D.N.Y. March 30, 2007) (internal quotation marks omitted). In his opposition, however, Plaintiff appears to disavow that he has raised a copyright claim before this Court. *See* Pl.'s Opp. at 25 ("[T]his lawsuit is not brought specifically under the violation of Copyright laws in the United States."); *id.* at 4 (stating that "Copyright and Plagiarism are two different issues").[2]

In any event, Biswas concedes that he did not register his paper with the copyright office, and that a copyright infringement claim would thus not be "legally enforceable by [][him] in the United States." Pl.'s Opp. at 26. Plaintiff is correct. "Section 411(a) of the Copyright Act provides, with certain exceptions not relevant here, that 'no civil action for infringement of the copyright in any United States work shall be instituted until ... registration of the copyright claim has been made.'" *Malibu Media, LLC v. Doe*, 18-CV-10956 (JMF), 2019 WL 1454317, at *1 (S.D.N.Y. Apr. 2, 2019) (citing 17 U.S.C. § 411(a)).[3]

---

[2] Plaintiff did, however, allege in the complaint that Defendants committed an "Copyright Violation under Oath." Pl.'s Compl. at 2.

[3] In his opposition, Plaintiff appears to also suggest that his plagiarism claim can be brought under 42 U.S.C. § 1985 (Conspiracy to Interfere with Civil Rights), 18 U.S.C. § 371 (Conspiracy to Defraud the United States), the First Amendment, and the Ninth Amendment. *See* Pl.'s Opp. at 2. Plaintiff provides no support for these potential causes of action, however, other than listing them at the beginning of his opposition memorandum. "Even in a pro se case ... although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks

Accordingly, Plaintiff's plagiarism claims, whether brought as a free-standing cause of action or based in copyright law, do not succeed.

## II. Plaintiff's Remaining Two Claims

To the extent that Plaintiff alleges claims against Defendants for (1) breach of trust and (2) fraud, both of these claims arise in state law.[4] *See Levitin v. PaineWebber, Inc.*, 159 F.3d 698, 701 (2d Cir. 1998) (distinguishing between federal claims and state law claims such as breach of trust and breach of fiduciary duty); *Grace Int'l Assembly of God v. Festa*, 17-cv-7090 (SJF)(AKT), 2019 WL 1369000, at *9 (E.D.N.Y. March 26, 2019) ("The remaining claims asserted by Plaintiff — breach of contract, negligence, fraud and breach of trust — all arise under state law.").

Generally speaking, courts decline to exercise supplemental jurisdiction once they have dismissed all claims over which they have original subject matter jurisdiction. *See Anegada Master Fund, Ltd. v. PXRE Grp. Ltd.*, 680 F. Supp. 2d 616, 624-25 (S.D.N.Y. 2010). Because Plaintiff's only potential federal claim, that for copyright infringement, has been dismissed, the Court declines jurisdiction over his remaining causes of action.[5]

---

omitted).

[4] Because courts do not recognize "Destruction of Evidence" as a stand-alone cause of action, the Court does not consider it as an independent claim. *See, e.g., Diaz v. City University of New York*, No. 13 Cv 2038 (PAC) (MHD), 2014 WL 10417871, at *30 (S.D.N.Y. Nov. 10, 2014) ("Spoliation does not itself provide an independent cause of action.").

[5] In his opposition, Plaintiff seems to assert that, because his remaining claims concern violations of his civil rights, these claims also arise under federal law and this Court would therefore have jurisdiction over them. *See* Pl.'s Opp. at 23, 28-29. "Columbia University and its employees are not state actors," however, and are therefore not subject to suit under 42 U.S.C. § 1983. *Milton v. Alvarez*, No. 04 Civ. 8265 (SAS), 2005 WL 1705523, at *3 (S.D.N.Y. July 19, 2005). Nor does the Court have diversity jurisdiction over this case, as both Plaintiff and Defendant Nallareddy are citizens of India. *See* Nallareddy Decl., Dkt. 35, at 1 ¶ 3 ("I am a citizen of India, and I am not a citizen…of the United States."); *see also Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002) ("[D]iversity is lacking … where on one side there are citizens and aliens and on the opposite side there are only aliens.").

## III. Leave to Amend

"[W]here dismissal is based on a *pro se* plaintiff's failure to comply with pleading conventions, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Henriquez-Ford v. Council of Sch. Supervisors and Administrators*, No. 14-CV-2496 (JPO), 2016 WL 93863, at *2 (S.D.N.Y. Jan. 7, 2016) (internal quotation marks omitted). That said, whether to grant or deny leave to amend is committed to the "sound discretion of the district court," and may be denied when amendment would be futile because the amended pleading would not survive another motion to dismiss. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *see Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 Fed. App'x 617, 622 (2d Cir. 2009) ("Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim.").

In this case, the Court does not believe that granting Plaintiff leave to amend would be productive. As described above, his plagiarism claim is not cognizable in this court, and he has conceded the absence of a potential copyright claim. Finally, all of his remaining claims arise in state, not federal, law.

The Court therefore dismisses Plaintiff's plagiarism claim with prejudice, and dismisses his state law claims without prejudice.

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint is dismissed. The Clerk of Court is

9

respectfully directed to terminate Dkt. 33 and to close this case.

SO ORDERED.

Dated: October 16, 2019
New York, New York

_____
Ronnie Abrams
United States District Judge